UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

JAE CHUNG, on behalf of himself and all others similarly :      Civ. Action No.:
situated,                                           :

                         :

             Plaintiff,                       :

         v.                                  :

                         :

MIDLAND FUNDING LLC, ENCORE CAPITAL     :
GROUP, INC., and RUBIN & ROTHMAN LLC,     :

                         :

            Defendants.                  :

-------------------------------------------------------------------x

## CLASS ACTION COMPLAINT

      1.      Plaintiff Jae Chung, by and through his counsel of record, on behalf of himself and

all others similarly situated in New York, alleges the following, upon information and belief, against

Defendants Midland Funding LLC, Encore Capital Group, Inc., and Rubin & Rothman LLC for

violation of the Fair Debt Collection Practices Act ("FDCPA"), 18 U.S.C. § 1692 *et seq*., the New

York General Business Law § 349, the New York Judiciary Law § 487 ("NY Judiciary Law §487"),

and civil conspiracy to violate the FDCPA, New York General Business Law § 349 ("NY GBL

§349").

      2.      Plaintiff brings this action on behalf of himself and a Class of New York consumers

who have been the subject of unlawful and deceptive debt collection practices employed by

Defendants, individually and collectively.

      3.      Defendants have filed, and caused to be filed, numerous debt collection lawsuits

against consumers like Plaintiff. Defendants file these consumer debt collection lawsuits, en masse,

without knowledge or proof of the underlying alleged debt, and without the ability to prove the same

in court, in order to turn collection accounts into more valuable default judgments which can then

be levied against the consumer's assets and/or wages.

4.      Integral to Defendants' scheme is "sewer service" whereby Defendants fail to serve properly the summons and complaint on the consumer defendant and then file fraudulent affidavits of service.  Defendants' practice of sewer service deprives Plaintiffs and putative class members of due process.  As a result, consumer defendants are not timely notified of the pending debt collection lawsuit and fail to appear in court to defend themselves.  Default judgments thus are readily and routinely entered against the debt collection defendant consumers.  In support of the entry of the default judgments, Defendants file or cause to be filed with the court fraudulent affidavits of merit claiming personal knowledge of the facts necessary to secure the default judgments when Defendants lack such knowledge.  After fraudulently obtaining the default judgments against consumers, Defendants proceed to collect on them by wrongfully restraining consumers' bank accounts, garnishing consumers' wages, seizing personal property and/or otherwise pressuring consumers to enter into illegitimate payment plans.  Upon information and belief hundreds, if not thousands, of New York residents have been victimized by Defendants' scheme to deprive them of due process and fraudulently obtain and enforce default judgments against them worth millions of dollars in violation of the FDCPA, NY GBL § 349 and NY Judiciary Law § 487.

## JURISDICTION AND VENUE

5.      Plaintiff invokes the subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for all civil actions arising under the laws of the United States, and pursuant to 15 U.S.C. §1692k(d).  This Court has supplemental jurisdiction over the Plaintiff's state law and common law claims pursuant to 28 U.S.C. § 1367(a).

6.      This Court has personal jurisdiction over Defendants because a substantial part of the

2

wrongdoing alleged herein occurred in New York. Defendants are authorized to do business in New York and have sufficient minimum contacts with New York so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantive justice.

7.    Venue is proper in this District under 28 U.S.C. §1391.

## THE PARTIES

8.    Plaintiff Jae Chung is a natural person residing in Queens, New York.

9.    Defendant Midland Funding LLC ("Midland Funding") is a Delaware Limited Liability Company, with its headquarters located at 8875 Aero Drive, Suite 200, San Diego, California 92123. Midland Funding is in the business of purchasing consumer collection accounts and debt collections and regularly conducts business in New York.

10.    Defendant Encore Capital Group, Inc. ("Encore") is a publicly traded company which is incorporated in the state of Delaware and maintains its headquarters at 3111 Camino del Rio North, Suite 1300, San Diego, California, 92108. Encore is the direct or indirect owner and parent of Midland Funding and other debt collection subsidiaries through which it conducts its business. Encore is publicly traded on the NASDAQ under the symbol "ECPG." Encore's revenue is based, in large part, on the debt collection activities of its subsidiaries, including Midland Funding. In its Form 10-K Annual Report filed with the Securities Exchange Commission ("SEC") on February 13, 2013, for the year ended December 31, 2012, Encore describes itself as "a leader in debt management and recovery solutions for consumers and property owners across a broad range of financial assets. We purchase portfolios of defaulted consumer receivables at deep discounts to face value and use a variety of operational channels to maximize our collections from these portfolios."

11.    Defendant Rubin & Rothman LLC is a New York limited liability company with its

3

principal place of business at 1787 Veterans Hwy Ste 32, Islandia, NY 11749 . Rubin & Rothman is law firm and debt collector.

## FACTUAL ALLEGATIONS

### The Debt Collection Lawsuit Industry

12.     Debt collectors and debt buyers are flooding the courts with debt collection lawsuits against consumers for credit card debt.  Since 2006, approximately 300,000 lawsuits are filed by debt collectors each year in New York Civil Court.  Under New York law, a creditor or debt collector bears the proof in legal actions and must submit admissible evidence demonstrating that the debt buyer is the rightful owner of the account and that the defendant consumer actually owes the debt in the precise amount claimed.  *See, e.g., American Express Bank FSB v. Zweigenheft,* NYLJ 1202588868411 (N.Y. Civ. Ct. Kings Co. Jan. 29, 2013); *Citibank v. Martin,* 807 N.Y.S. 2d 284 (N.Y. Civ. Ct. N.Y. Co. 2005).  Debt collectors acting for their creditor clients, however, generally do not obtain consumer account documentation prior to commencing a lawsuit against a consumer for debt collection.  Instead, debt collectors bring lawsuits based on the skeletal electronic files received from third parties, or less.

13.     "Debt buyers" are companies, like Defendant Midland Funding, that buy defaulted, charged-off debts for pennies on the dollar and then seek to collect the full face value of the debt for themselves.  Many debt buyers are resell debts to other debt buyers, and it is not uncommon for debts to be bought and sold numerous times.  Debts which are new command a higher price than older debts.  There is even an active market for debts which are past the statute of limitations and debts discharged in bankruptcy.

14.     Consumer collection accounts which have been turned into enforceable court

judgments through debt collection lawsuits command a much higher value in the debt market than collection accounts which have not been reduced to a judgment. This is because once the collection account has been reduced to a court judgment, the owner of the judgment can use strong-armed post-judgment collection remedies against the consumer, including wage garnishment, attachment of bank accounts and asset seizure. Thus, in the debt buying market, a portfolio of "judgment accounts" is worth significantly more than a portfolio of "collection accounts."

15.     The least expensive and quickest type of judgment to obtain is the default judgments. Generally, a creditor or debt collector needs only the following to obtain a default judgment against the consumer: (1) a form complaint; (2) an affidavit by an employee of the creditor attesting to the accuracy of the amount owed; (3) proof of service at the consumer's last known address; and (4) a form default order for the court's execution.

16.     A typical debt purchase portfolio contains very limited information about the underlying debts, including only the consumer's name, Social Security number, last known address and telephone number, the credit card account number, the charge-off date, the date and amount of the last payment and alleged amount owed. This information, often referred to in the debt buying industry as the "media", is complied in a spread sheet and electronically transmitted to the debt buyer. The debt buyer typically does not purchase or obtain additional documents showing an indebtedness between the original creditor and debtor, such as the credit card contract or agreement, or any subsequent amendments to the agreement, the account statements, customer service records, or customer dispute records. As a result of the limited date purchased by the debt buyer concerning the underlying debts, most debt buyers have difficulty substantiating their claims that the alleged consumer debt is actually owed in the amount claimed. *See, e.g.*, Federal Trade Commission,

5

*Collecting Consumer Debts: The Challenges of Change* (2009).

17.     According to the Federal Trade Commission ("FTC"), "[w]hen accounts are transferred to debt collectors, the accompanying information often is so deficient that the collectors seek payment from the wrong consumer or the wrong account from the correct consumer.  FTC, "Collecting Consumer Debts: The Challenges of Change" (2009) at 22, available at http://www.ftc.gov/bcp/workshopts/debtcollection/dcwr.pdf.   A recent review of the consumer litigation system by the FTC found that "credit card issuers and other companies were basing some lawsuits on incomplete or false paperwork."  See "Problems Riddle Moves to Collect Credit Card Debt," by Jessica Silver-Greenberg, The New York Times, August 12, 2012. Tom Pahl, the assistant director of the FTC's division of financial practices stated, "Our concerns center on the fact that debt collection lawsuits are a pure volume business. . . . The documentation is very bare bones."  *Id.*

18.     As the New York Times reported on August 12, 2012, "many of the [consumer debt collection' lawsuits rely on erroneous documents, incomplete records and generic testimony from witnesses, according to judges who oversee the cases."See "Problems Riddle Moves to Collect Credit Card Debt," by Jessica Silver-Greenberg, The New York Times, August 12, 2012.  Noach Dear, a civil court judge in Brooklyn, New York stated, "I would say that roughly 90 percent of the credit card lawsuits are flawed and can't prove the person owes the debt."  *Id.*  As The New York Times reported:

> Interviews with dozens of state judges, regulators and lawyers, however, indicated that such flaws are increasingly common in credit card suits.  In certain instances, lenders are trying to collect money from consumers who have already paid their bills.
> . . .
> The problem, according to judges, is that credit card companies are not always following the proper legal procedures, even when they have the right to collect money.  Certain cases hinge on mass-produced documents because lenders do not provide proof off outstanding debts,

like the original contract or payment history.

*Id.*

19.     Because of the high rate of default by consumer defendants in collection lawsuits, debt collectors and their creditor clients rarely are required to prove their allegations through actual evidence of the alleged underlying consumer debt. Indeed, consumers appear to defend themselves in approximately only 10% of the debt collection cases brought in the New York Civil Court, and default judgments thus are entered in the vast majority of debt collection lawsuits filed against consumers. Upon information and belief, a predominate reason for the low appearance of consumer defendants in debt collection lawsuits is the widespread use of "sewer service" whereby the debt collector plaintiff intentionally fails to provide proper service of the summons and complaint.

20.     Thus, the valuation of a particular debt portfolio is not based on the legitimacy of the debt itself, but on the likelihood that a debtor will succumb to the pressure exerted by the threat or entry of a court judgment. *See* FTC, Challenges of Change at 20. The odds are stacked against the alleged debtor. *See* Claudia Wilner et al., "Debt Deception: How Debt Buyers Abuse The System To Prey On Lower-Income New Yorkers, Neighborhood Econ. Dev. Advocacy Project 6" (2010), available at http://www.nedap.org/pressroom/documents/DEBT_DECEPTION_FINAL_WEB.pdf. (noting that 95% of 457,322 lawsuits filed by twenty-six debt buyers against people residing in low- or moderate-income neighborhoods ended in default judgments, and not a single consumer in the study was represented by counsel.); Jessica Silver-Greenberg, "Boom in Debt Buying Fuels Another Boom- In Lawsuits," Wall Street Journal, Nov. 28, 2010 (reporting that industry estimates 94% of collections end in default and that "[t]he majority of borrowers don't have a lawyer, some don't know they are even being sued, and others don't appear in court, say judges.").

21.    The New York Times reported that:

The errors in credit card suits often go undetected, according to the judges. Unlike in foreclosures, the borrowers typically do not show up in court to defend themselves. As a result, an estimated 95 percent of lawsuits result in default judgments in favor of lenders. With a default judgment, credit card companies can garnish a consumer's wages or freeze bank accounts to get their money back. . . .

Many judges said that their hands are tied. Unless a consumer shows up to contest a lawsuit, the judges cannot question the banks or comb through the lawsuits to root our suspicious documents. Instead, they are generally required to issue a summary judgment, in essence an automatic win for the bank.

See "Problems Riddle Moves to Collect Credit Card Debt," by Jessica Silver-Greenberg, The New York Times, August 12, 2012.

22.    Even a reasonable consumer may feel forced to pay an invalid debt, rather than face the consequences of having a judgment entered against him or her:

[T]he judgment will impose costs on the consumer by damaging the consumer's credit rating . . . [which] does more than merely raise the consumer's cost of credit. A damages credit score can make it difficult to rent an apartment, find a job, or even purchase automobile insurance. . . . credit reports typically do not record the filing of the lawsuit, but they do record judgments. Therefore, a civil filing serves as a credible threat to inflict harm on the [consumer] defendant and may induce the [consumer] defendant to pay.

See Richard Hayes, Broke But Not Bankrupt: Consumer Debt Collection In State Courts, 60 Fla. L. Rev. 1, 20 (2008)

23.    As a result, debt collectors have been empowered to flood the court system with actions to collect on consumer debt, including debt which is time-barred or already paid-off. FTC, Challenges of Change at 24. *See also*, Judicial Counsel of Cal., *Trial Court Caseload Increases to Over 10 Million Filings, Data Points* 1 (2010) (reporting "[a]n estimated 96,000 consumer debt-collection cases were filed in 2009 in Alameda, Contra Costa and San Francisco Counties alone, up

from 53,665 in 2007); Urban Justice Ctr., *Debt Weight: The Consumer Credit Crisis In New York City and Its Impact on the Working Poor* 1 (2007) (annual filing of debt collection cases in New York City increased by more than 60% between 2002 and 2007).

24.　Indeed, in 2009, the FTC received 37,052 complaints from consumers stating that they had been targeted by debt collectors who were trying to collect debts that were not owed, in amounts over what was owed, or which had been discharged in bankruptcy. See Federal Trade Commission, Annual Report 2012: Fair Debt Collection Practices Act,. P.6-10, posted on line at www.ftc.gov/os/2010/P104802fdcpa2010annrpt.pdf. The FTC noted that its 2009 complaint data, however, "may understate the extent to which consumers have concerns about the practice of debt collectors" because consumers generally may not be aware of the FTC's enforcement role or may only file complaints with collectors, creditors or other enforcement agencies. *Id.* at 2.

25.　The FTC recently reiterated that "The FTC receives more consumer complaints about debt collectors, including debt buyers, than about any other single industry."

26.　These dismal statistics are well known in the debt collection industry and are put to use by Defendants to maximize corporate profit at the consumer's expense. As Defendant Encore states in its Form 10-K filed with the SEC on February 13, 2013, for the year ended December 31, 2012 at page 1, it employs proprietary statistical and behavioral models to maximize profits from consumer collection accounts:

> . . .one of the debt collection industry's most formidable challenges is that many distressed consumers will never make a payment, much less retire their total debt obligation. In fact, we generate payments from fewer than one percent of our accounts every month. To address these challenges, we evaluate portfolios of receivables that are available for purchase using robust, account-level valuation methods, and we employ proprietary statistical and behavioral models across the full extent of our operations. We believe these business practices contribute to our ability

to value portfolios accurately, avoid buying portfolios that are incompatible with our methods or goals, and align the accounts we purchase with our operational channels to maximize future collections. We also have one of the industry's largest distressed consumer databases. We believe that our specialized knowledge, along with our investments in data and analytic tools, have enabled us to realize significant returns from the receivables we have acquired.

27.    Defendant Encore, acting through its subsidiaries and an attorney network, initiates debt collection litigation against consumers nationwide, and relies on the high number quick default judgments resulting therefrom to generate profits from the consumer collection accounts. As set forth in the Encore Form 10-K filed with the SEC on February 13, 2013, for the year ended December 21, 2012 at page 15:

A significant portion of our collections relies upon our success in individual lawsuits brought against consumers and our ability to collect on judgments in our favor.

We generate a significant portion of our revenue by collecting on judgments that are granted by courts in lawsuits filed against consumers. A decrease in the willingness of courts to grant such judgments, a change in the requirements for filing such cases or obtaining such judgments, or a decrease in our ability to collect on such judgments could have a material and adverse effect on our results of operations.

28.    Defendant Encore recognizes that default judgments against consumers in debt collection cases are readily obtained in many jurisdictions which do not require supporting documentation, such as the consumer's credit card account statements, evidencing the underlying debt. One of the recognized risks to Encore's business model, and profitability, is litigating in certain jurisdictions which require actual proof of the consumer debt as a condition precedent to obtaining a default judgment. This becomes especially problematic when Encore is unable to produce the consumer credit card account documents in support of their claims. The Encore Form 10-K filed with the SEC on February 13, 2013, for the year ended December 21, 2012, provides at

page 15:

> Further, courts in certain jurisdictions require that a copy of the account statements or applications be attached to the pleadings in order to obtain a judgment against consumers. If we are unable to produce those account documents, these courts could deny our claims, and our results of operations and cash flows may be materially and adversely affected.

29. Defendant Encore maintains an attorney network to pursue debt collection actions against consumers. Upon information and belief, Defendant Rubin & Rothman is a member of the Encore attorney network for consumer debt collection actions. The Encore Form 10-K filed with the SEC on February 13, 2013, for the year ended December 21, 2012, provides at page 5:

> When we decide to pursue legal action, we place the account into our internal legal channel or refer them to our network of retained law firms. If placed to our internal legal channel, management in that channel will evaluate the accounts and make the final determination whether to pursue legal action. If referred to our network of retained law firms, we rely on our law firms' expertise with respect to applicable debt collection laws to evaluate the accounts placed in that channel in order to make the decision about whether or not to pursue collection litigation. Prior to engaging an external collection firm, we evaluate the firm's operations, financial condition, and experience, among other key criteria. The law firms we have hired may also attempt to communicate with the consumers in an attempt to collect their debts prior to initiating litigation. We pay the law firms a contingency fee based on amounts they collect on our behalf.

**Plaintiff Jae Chung's Factual Allegations**

30. Upon information and belief, Plaintiff Jae Chung was the holder of a credit card issued by HSBC, which he used primarily for personal, family and household purposes. The last time Mr. Chung used said credit card to make a purchase was in or around 2005. Upon information and belief, Mr. Chung owed approximately $2,000 on this HSBC credit card at that time. Mr. Chung continued to make payments towards his debt on his HSBC credit card, with the last payment made

11

by Mr. Chung in or around 2009.

31.    In or around December 28 2012, Mr. Chung received an Income Execution- Notice of Levy Pursuant to Sec. 5231 of the N.Y. CPLR. At this time, Mr. Chung first became aware that a judgment had been entered against him in the principle amount of $8,365.61, plus interest and fees, for a total amount of $9,416.75. The judgment creditor in the *Chung Action* was Midland Funding LLC, working on behalf of HSBC Bank Nevada, N.A., and the lawyers representing Midland Funding LLC were Rubin & Rothman LLC. It was at this time that Mr. Chung first became aware that a debt collection lawsuit previously had been brought against him in Civil Court, County of Queens, captioned *Midland Funding LLC, v. Jae Chung,* Index No. 106818-11 (the "*Chung Action*").

32.    In the *Chung Action*, Midland Funding, through its lawyers Rubin & Rothman, sought to recover from Mr. Chung the sum of $8,365.51 for alleged credit card debt owed to HSBC. Upon information and belief, Mr. Chung did not owe this entire amount.

33.    Mr. Chung was not served with a summons and complaint in the *Chung Action*. Because he did not receive proper service, he was unable to appear and defend himself in court. Yet the process server, Azzam Abderrahman, License Number 0820996, executed an Affidavit of Service claiming that in person service was made on Mr. Chung on December 8, 2011, at 11:35 a.m. Mr. Abderrahman has a recent history of engaging in alleged due process violations, including the following:

A.    On January 16, 2013, the City of New York Department of Consumer Affairs entered into a Consent Order, for Violation Number LL # 5312945, with the process server, Azzam Abderrahman, License Number 0820996, for alleged due process violations, including failure to keep

proper records when effectuating service on a natural person. Pursuant to this Consent Order, Azzam Abderrahman agreed, *inter alia*, to the following: to refrain from signing his "name on any affidavit containing any information that has the capacity, tendency or effect of intentionally misleading a reader of the affidavit" Consent Order ¶ 30; "Any affidavit affirmed by Respondent [Abderrahman] that has the capacity, tendency or effect of misleading a reader of the affidavit shall be considered intentional if there are repeated similar acts because of Respondent's or Respondent's agent's use of canned or form language." *Id.* ¶ 31; "It shall be the Respondent's burden to show that he/she did not intend the affidavit to be misleading." *Id.* ¶ 32; "Respondent shall not use fictitious names in his/her affidavit to refer to defendants or persons, except when Respondent is unable to obtain the name of the person. Where Respondent is unable to obtain the first name of the person, Respondent shall use either "John" (for a male) or "Jane" (for a female) to represent the first name of the person. When Respondent is unable to obtain the last name of the person, Respondent shall use "Doe" to represent the last name of the person." *Id.* ¶ 33. The Consent Order also requires M. Abderrahman to "attend any future training about the law and regulations that relate to and govern the service of process in the City of New York upon notice from the Department." Id. ¶ 45.

   B. On August 26, 2010, the City of New York Department of Consumer Affairs entered into an Assurance of Discontinuance, Violation Number LL # 5130985, with the process server, Azzam Abderrahman, License Number 0820996, for alleged due process violations, including violating provision of Title 20 of the Administrative Code of the City of New York (the "Code"), found in Chapter 1 of the Code, beginning at Section 20-101 (the "License Enforcement Law"), Chapter 2 of the Code, Subchapter 23, beginning at Section 20-403 (known as the Process Servers Law); title 6 of the Rules of the City of New York (beginning at Section 1-01 (known as the

"License Enforcement Rules"); Title 6 of the Rules of the City of New York, Chapter 2, Subchapter W, beginning at Section 2-231 (the "Process Servers Rules") in connection with Mr. Adberrahman's Process Server License; and

C. In *LR Credit v. Taylor*, Index # 073464/04 (New York Civil Court, Kings County 2004), Azzam Abderrahman served by substitute service (on Mr. Taylor's wife "Mary Doe"), although Mr. Taylor has never been married. See South Brooklyn Legal Services, "Proposed Int. 6-A-a Local Law To Amend the Administrative Coder of the City of New York, in Relation to Process Servers, dated March 2, 2010.

34.  On March 26, 2012, a default judgment was entered against Mr. Chung in the *Chung Action* in the amount of $8,365.61, plus interest from March 26, 2012.

35.  On November 28, 2012, Rubin & Rothman, on behalf of its client, Midland Funding LLC, signed an Income Execution to enforce the March 26, 2012 default judgment by garnishing Mr. Chung's wages. At the bottom of the Income Execution it states, inter alia, that "this is an attempt to collect a debt. . . . This is a communication from a debt collector."

36.  Default Judgments similarly have been entered against consumers nationwide through Defendants' use of false court filings, including, but not limited to, sworn pleadings and affidavits. Indeed, the Midland Funding computer system generates hundreds of form affidavits daily for use in consumer debt collection lawsuits. Midland employees, moreover, are required to sign stacks of affidavits in which they attest to having personal knowledge of the underlying alleged consumer debt which is the subject of the collection lawsuits. But in fact, the Midland employees have little to no actual knowledge of the underlying debt. Nor can they have such knowledge because much of the alleged debt is not owed, in whole or in part, or is otherwise not valid or collectible. See *Vassalle*

14

*v. Midland Funding, LLC*, No. 3:11-CV-00096, 2011 WL 3557045 (N.D. Ohio Aug. 12, 2011)(approving class action settlement with 1.4 million consumers involving allegations of "robo-signing" of affidavits generated by Midland funding for use in collection lawsuits at the rate of 300 to 400 per day, in which Midland employees falsely claim personal knowledge concerning the underlying debt), settlement order reversed, and the case remanded for further proceedings consistent with the order, *Vassalle v. Midland Funding, LLC*, 2013 U.S. App. LEXIS 3914, 2013 FED App. 0050P (6th Cir. February 26, 2013).

37.     Upon information and belief, Midland Funding LLC has furnished false information to credit reporting agencies concerning Mr. Chung's alleged HSBC credit card debt and Mr. Chung's credit has been damaged as a result.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of persons in New York against whom debt collection activities were taken, including, but not limited to, legal action, and which activities were taken or orchestrated by Defendants and their affiliates in an effort to collect on debt which Defendants knew, or reasonably should have known and failed to know, was not owed, in whole or in part, or were otherwise not valid for collections, and/or where Defendants had no actual knowledge of the alleged debt but made representations as to their knowledge of the alleged debt.

39.     Plaintiff does not know the exact size or identifies of the proposed class, since such information is in the exclusive control of Defendants. Plaintiff believes that the class encompasses many hundreds to thousands of individuals whose identities can be readily ascertained from Defendants' books and records.

40.    Common question of law and fact raised in this action include the following:

(a)    Whether Defendants have orchestrated debt collection efforts which seek to collect on consumer debt which Defendants know, or reasonably should know and fail to know, is debt which is not owed, in whole or in part, by the consumer, or which otherwise is not valid for collections, including (1) orchestrating and commencing legal actions against consumers to collect on debt which is not owed, in whole or in part, or otherwise is not valid for collections; and (2) mass generating and robo-signing of affidavits for use in said debt collection lawsuit.

(b)    Whether Defendants violated the FDCPA;

(c)    Whether Defendants violated New York General Business Law § 349; and

(d)    Whether Plaintiff and the other members of the Class are entitled to damages, restitution, declaratory relief and/or injunctive relief as a result of Defendants' conduct, and the proper measure of damages and other relief.

41.    Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained able counsel with extensive experience in deceptive consumer practices, including violations of the FDCPA, GBL § 349, and class action litigation.  The interests of Plaintiff are coincident with, and not antagonistic to, the interests of the other Class members.

42.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

43.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for defendant.

16

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them. The Class is readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation. Plaintiff will encounter no difficulty in managing this action as a class action.

## FIRST CAUSE OF ACTION

### Violation of the Fair Debt Collection Practices Act ("FDCPA")

45. Plaintiff restates, realleges and incorporates by reference the foregoing paragraphs.

46. Plaintiff and the other members of the Class are "consumers" as that term is defined in 15 U.S.C. § 1692a(3).

47. Defendants are "debt collectors" as that term is defined in 15 U.S.C. § 1692a(6) insofar as Defendants and their employees, agents and representatives collect and attempt to collect false or invalid debts from consumers.

48. The FDCPA, 15 U.S.C. 1692e, provides:

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . .

2) The false representation of – (A) the character, amount, or legal status of any debt; . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

17

(13) The false representation or implication that documents are legal process.

49.     The FDCPA,15 U.S.C. §1692f, provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

50.     Defendants have violated 15 U.S.C. §§1692 (d), (e) and (f) by making and using false representations and deceptive and unconscionable means to collect or attempt to collect consumer debt by: (a) causing lawsuits to be filed en masse against consumers for debt collection when Defendants know, or reasonably should know and fail to discovery, that the alleged underlying debt which is the subject of the litigation, is not valid, in whole or in part, or in the amounts sought; (b) causing the mass production of affidavits and the robo-signing thereof for use in said lawsuits; (c) producing and filing fraudulent affidavits of service that falsely claim that Plaintiff and other Class members were served with a summons and complaint when in fact they were not; (d) producing and filing false attorney affirmations stating that service of the summons and complaint has been made, when in fact it was not; (e) producing and filing fraudulent affidavits of merit that falsely claim that Defendants have personal knowledge of the fact necessary to obtain a default judgment, when in fact they do not; (f) misrepresenting that Defendants are in possession of or could obtain documentation evidencing that Plaintiff and other Class members owe a debt, when in fact they do not possess and cannot obtain such documentation; (g) using fraudulent, deceptive and misleading affidavits and affirmations to obtain default judgments against Plaintiff and other Class members under false pretenses; (h)

18

using fraudulently obtained default judgments to extract money from Plaintiff and other Class

members; and (i) furnishing false information to credit reporting agencies concerning the alleged

debt owed by Plaintiff and other members of the Class and failing to correct the false information

furnished.

   51.  As a direct and proximate result, Plaintiff and other Class members have sustained

actual damages in an amount to be proven at trial and are also entitled to statutory damages, costs

and attorneys' fees.

## SECOND CAUSE OF ACTION

### Violation of New York General Business Law § 349 ("NY GBL § 349")

   52.  Plaintiff restates, realleges and incorporates by reference the foregoing

paragraphs.

   53.  Plaintiff asserts this claim on behalf of himself and all similarly situated persons

who reside in New York.

   54.  Defendants' acts and practices alleged herein constitute acts, uses, or employment

by Defendants and their agents of deception, fraud, unconscionable and unfair commercial

practices, false pretenses, false promises, misrepresentations, or the knowing concealment,

suppression, or omission of material facts with the intent that others rely upon such concealment,

suppression, or omission, in connection with the sale or advertisement of merchandise, and with

the subsequent performance, of Defendants in violation of NY GBL § 349, making deceptive and

unfair acts and practices illegal. Defendants' acts and practices alleged herein in violation of NY

GBL § 349 include using false representations and deceptive and unconscionable means to

collect or attempt to collect consumer debt by, *inter alia*,: (a) causing lawsuits to be filed en masse against consumers for debt collection when Defendants know, or reasonably should know and fail to discovery, that the alleged underlying debt which is the subject of the litigation, is not valid, in whole or in part, or in the amounts sought; (b) causing the mass production of affidavits and the robo-signing thereof for use in said lawsuits; (c) producing and filing fraudulent affidavits of service that falsely claim that Plaintiff and other Class members were served with a summons and complaint when in fact they were not; (d) producing and filing false attorney affirmations stating that service of the summons and complaint has been made, when in fact it was not; (e) producing and filing fraudulent affidavits of merit that falsely claim that Defendants have personal knowledge of the fact necessary to obtain a default judgment, when in fact they do not; (f) misrepresenting that Defendants are in possession of or could obtain documentation evidencing that Plaintiff and other Class members owe a debt, when in fact they do not possess and cannot obtain such documentation; (g) using fraudulent, deceptive and misleading affidavits and affirmations to obtain default judgments against Plaintiff and other Class members under false pretenses; (h) using fraudulently obtained default judgments to extract money from Plaintiff and other Class members; and (i) furnishing false information to credit reporting agencies concerning the alleged debt owed by Plaintiff and other members of the Class and failing to correct the false information furnished.

55.     Defendants' acts and misrepresentations constitute acts, uses, or employment by defendant and its agents of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or

omission, in connection with the sale or advertisement of merchandise, and with the subsequent

performance, of Defendants in violation of § 349 of New York's General Business Law, making

deceptive and unfair acts and practices illegal.

56.    The unfair and deceptive trade acts and practices of Defendants have directly,

foreseeably, and proximately caused damages and injury to Plaintiff and the other members of

the Class. Defendants' wrongful and deceptive conduct has a broad impact on consumers at

large.

57.    As a direct and proximate result of these violations of § 349 of the General

Business Law, Plaintiff and the other Class members have suffered compensable harm and are

entitled to preliminary and permanent injunctive relief, and to recover actual and treble damages,

costs and attorney's fees.

### THIRD CAUSE OF ACTION

#### Violation of the New York Judicial Law § 487
#### Against Defendant Rubin & Rothman.

58.    Plaintiff restates, realleges and incorporates by reference the foregoing

paragraphs.

59.    New York law states that "an attorney or counsel who . . . is guilty or any deceit or

collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . .

[i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal

law . . . forfeits to the party injured treble damages, to be recovered in a civil action." N.Y. Jud.

Law § 487(l).

60.    As stated herein, Defendant Rubin & Rothman conducts business in New York,

violated § 487 of the New York Judiciary Law by engaging in deceit or collusion, or consenting

21

to deceit or collusion, with the intention to deceive the courts and opposing party consumers, by *inter alia*, commencing debt collection lawsuits on behalf of Midland Funding LLC, with no knowledge of the alleged underlying debt, preparing fraudulent, deceptive and misleading affidavits and affirmations; misrepresenting that Defendants are in possession of or could obtain documentation evidencing that Plaintiff and other Class members owe a debt, when in fact they do not possess and cannot obtain such documentation; using fraudulent, deceptive and misleading affidavits and affirmations to obtain default judgments against Plaintiff and other Class members under false pretenses; using fraudulently obtained default judgments to extract money from Plaintiff and other Class members.

61.     Defendant Rubin & Rothman conducts business in New York committed the above-described acts wilfully and/or knowingly and have caused injury and damages to Plaintiff and the other members of the Class, and unless enjoined, will cause further irreparable injury.  As a direct and proximate result of Rubin & Rothman's violation of the New York Judiciary Law § 487, Plaintiff and the other members of the Class have suffered compensable harm and are entitled to recover actual and treble damages.

### FOURTH CAUSE OF ACTION

**Civil Conspiracy To Commit Violations of the FDCPA,
NY GBL § 349 and NY Judiciary Law § 487**

62.     Plaintiff restates, realleges and incorporates by reference the foregoing paragraphs.

63.     Defendants have engaged in conduct, acts and practices that violated the FDCPA, NY GBL § 349 and/or NY Judiciary Law § 487.  Defendants have agreed to provide assistance to their co-Defendants, or some of them, to engage in the conduct, acts and practices that have

violated the FDCPA, NY GBL § 349 and/or NY Judiciary Law § 487. Upon information and belief, to be confirmed during discovery, Defendants made formal and informal agreements between and among themselves in furtherance of their conspiracy, including, but not limited to, the agreements with the Encore attorney network for consumer debt collections.

64.     Defendants have committed overt acts in furtherance of their agreements to provide assistance to their co-Defendants, or some of them, to engage in the conduct, acts and practice that have violated the FDCPA, NY GBL § 349 and/or NY Judiciary Law § 487.

65.     Defendants' overt acts and assistance to their co-Defendants to engage in the conduct, acts and practices that have violated the FDCPA, NY GBL § 349 and/or NY Judiciary Law § 487, were intentional, in furtherance of a plan, and were not inadvertent.

66.     Defendants' conspiracy and agreements and acts in furtherance of their conspiracy have directly, foreseeably, and proximately caused actual losses, damages and injuries, including financial losses, to Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

A.     An order certifying this case as a class action under Fed. R. Civ. P. Rule 23, and appointing Plaintiff and his counsel to represent the Class;

B.     An order declaring that Defendants' alleged acts and practices constitute violation of the Fair Debt Collection Practices Act;

C.     An order declaring that Defendants' alleged acts and practices constitute violation of the New York General Business Law § 349;

D.      An injunction enjoining Defendants permanently from continuing to harm Plaintiff and

the other members of the Class;

E       Restitution to Plaintiff and the other members of the Class;

F.      Actual damages for injuries suffered by Plaintiff and the other members of the Class;

G.      Statutory damages pursuant to the FDCPA;

H.      Treble damages pursuant to GBL § 349;

I.      Treble damages pursuant to NY Judiciary Law § 487; and

J.      Reasonable attorney's fees and costs of this action, statutory pre-judgment interest,  and

such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury to the extent authorized by law.

DATED: March 25, 2013
New York, New York

GISKAN SOLOTAROFF ANDERSON & STEWART LLP

Catherine E. Anderson
11 Broadway Suite 2150
New York, New York 10004
Tel 212.847.8315
canderson@gslawny.com

Chinsok Kim, Esq.,
163-10 Northern Blvd., Suite 303
Flushing, New York 11358

*Counsel for Plaintiff and the Class*